### NEWELL MOWRY ET UX. v. THOMAS N. STAPLES.

The statute of descent in Rhode Island provides, that " when any of the children of the intestate die without issue, in the lifetime of the mother, every brother and sister and their representatives shall inherit equally with the mother." It was under this clause of the statute that the plaintiffs claimed. The defendant claimed, that the mother took the whole as next of kin under the following clause of the same statute : " And where there are no children of the intestate, all such right, title and interest shall vest in, and be equally divided amongst, the next of kin, computing according to the degrees of the civil law ;" and he contended, that the clause on which the plaintiffs relied, disposed only of an estate by descent, and not one by purchase. *Held*, that the estate described in the declaration, descended in equal portions to the mother, brothers and sisters.

THIS was an action of trespass and ejectment, and the case was submitted to the court on the following agreed statement of facts : George Curlis Mann died seized of the estate whereof his father, Moses Mann, died seized, which estate came to said George by purchase in fee and not by descent, and was subject to the right of dower belonging to his mother, the widow of said Moses. After the decease of said Curlis, the right of dower of said widow was assigned to her by metes and bounds according to law, and the residue of said Curlis's said estate was divided among the brothers and sisters and mother of said Curlis, he having died without issue. Nathan Staples, under whom the present defendant now holds, purchased of the brothers and sisters of said Curlis their several shares in said Curlis's estate, so assigned to them as aforesaid, and also their reversionary rights in the

Mowry et Ux. *v.* Staples.

lands assigned to the widow for dower, excepting that the reversionary rights of the present plaintiffs in the right of the wife, one of the sisters of said Curlis, has never been sold. Also, said Nathan has purchased all the right, title and interest which said widow had in and to the estate whereof the said George Curlis Mann died seized, by which the widow intended and did convey all the right which by law she had in said estate, both as widow of said Moses and heir to said Curlis. It was also agreed, that, if in the opinion of the court, the real estate whereof the said Curlis died seized as aforesaid, descended in equal portions to his brothers and sisters and mother, then the plaintiffs to have judgment for damages sufficient to carry costs ; and their costs and judgment for the possession of one undivided fifth part of the lands described in their declaration. If, in the opinion of the court, the estate aforesaid whereof said Curlis died seized, descended wholly to his mother, the widow of said Moses, then the defendant shall have judgment for costs. This statement of facts arose and happened under the Rhode Island statute of 1798, and the case is to be decided under that statute.

The opinion of the court was delivered by DURFEE, C. J., as follows :

This case was submitted to the court on an agreed statement of facts. For the plaintiff it is contended that the estate of George Curlis Man, who claimed by purchase the estate whereof his father, Moses, died seized and intestate, vested, on the decease of said George, (he having died without issue) in his mother and surviving brothers and sisters equally. And this in virtue of that clause of the statute of 1798, which provides that " when any of the children of the intestate die without issue in the lifetime of the mother, every brother and sister and their representatives shall inherit equally with the mother."

For the defendant it is contended, that the mother took the whole, as next of kin, under the following clause of the the same statute : " And where there are no children of the intestate, all such right, title and interest shall vest in and be equally divided amongst the next of kin, computing according to the degrees of the civil law," and that the clause on which the plaintiff relies disposes only of an estate by descent and not one by purchase.

The question which this case presents must, indeed, turn wholly on the construction of the first-mentioned clause, considered in connection with the proviso which immediately succeeds it. If that clause disposes of an estate by purchase, the plaintiff's claim to one undivided part of the lands described in the declaration is sustained ; but if it disposes only of an estate by descent, he can recover nothing in this action. The first question then is, does this clause make any reference to the origin of the title to the estate of which it disposes ? Does it describe the estate of which the child dies seized by any express or implied reference to the mode or manner in which he became seized ? Perhaps it will be well to consider this clause and the two others that precede it, without any reference, at first, to the subsequent proviso ; by so considering them, we shall the more clearly perceive the necessity of the proviso, and the nature and extent of its application to the preceding clauses.

These three clauses, which comprise all that precedes the proviso, will, I apprehend, when thus independently considered, be found to contain no reference whatever to the origin of the titles of which they dispose. The two first clauses certainly contain no such reference. It is the real estate of the parent, no matter how acquired, of which the first clause disposes by vesting it, on his decease, in his children. It is the real estate of the ancestor or relative, no matter how ac-

quired, of which the second clause disposes, by vesting it in his next of kin on his decease. Now, if the third and last clause disposes of title, without reference to its origin, then the whole section preceding the proviso, when thus independently considered, disposes of all estates that fall within the contingencies therein named, whether they be estates by descent, gift or devise, or estates by purchase.

If this clause does, by its own terms, limit its application to a particular description of estate, it will be readily granted, I think, that inasmuch as it immediately follows clauses of such unlimited application, such description should be very explicit, and not merely inferable from vague and doubtful language. Is, then, the language of the third clause in any part descriptive of a particular title in the deceased child? If it be so, it is from the use of the word intestate, " in case any of the children of the *intestate* die."

The intestate, in this clause, means a deceased father, and if this clause by this term be limited to estates by descent, it is even yet further limited, for it is limited to such estates only as have, passed to the child from the father. A limitation of such a special character ought not to be readily inferred from a single word, and that word of a changeable and latitudinous meaning. Few words in law are of more varied and wide application than the word intestate. In its use as a noun it carries its adjective character. It is used sometimes simply to designate a person who has died without a will, leaving merely personal estate ; at others, as leaving merely real estate. It is sometimes used to designate the deceased husband, in whose estate the widow is entitled to dower. Used in connection with the term administrator, it may mean a deceased debtor or creditor, but it does not necessarily imply a person from whom real estate passes by descent to a child or other heir, though named in the same sentence, for he may

not die seized of real estate, and if so seized, his whole real estate may be required to pay his debts, and his child may come in by purchase, or not at all. The term, therefore, may be used with reference to the child, without implying that the estate of such child is an estate by descent or purchase. In other words, the term may have no reference whatever to the origin of the estate in the child's hands. This term in the first two clauses has a very different, or rather a far more complex signification than what it has in the third. In the first two it designates not merely a person who has died without a will, but a person from whom real estate passes by descent to a child or other heir. That which is so named is emphatically the intestate of the clauses. But when the same term is carried forward into the third clause, it loses half its former meaning. It no longer means a person from whom an estate passes by descent to an heir, nor a person, as in the other case, from whom the degree of kindred is computed, for the deceased child is the true intestate of the clause, and the only person of whose property the clause makes a disposition. I cannot, therefore, infer that the legislature, by the use of this word, unaided as it is, intended to describe a title merely by *descent* in the child, or any other special title. The term, as applicable to this case, designates the child both of a deceased father, one deceased without a will, and it is not necessary for the purpose of deciding it, to determine whether the term is, or is not, to be so limited. These three clauses, then, considered independently of the proviso, make dispositions, each in its own way, of all estates, no matter how acquired, that fall within their respective contingencies. But it appears to have been one great object with the legislature to restrict the descent of estates, as far as practicable, to the blood of the intestate. This, if carried beyond the first descent, could be done only by *distinguishing*

between estates by descent, gift and devise, and estates by purchase; and by providing specially for the descent of estates of the first class. This object, therefore, forced upon the legislature the necessity of the proviso which fulfils this duty, and is the first and only part of the section that refers to the nature and origin of the title. The clauses preceding the proviso, cover all and any estates, without recognizing any distinction; but the proviso, on being added, classifies them, and subjects those of the first class to its conditional control, whilst it leaves those of the second class, to wit, estates by purchase, beyond its purview, and subject to the control only of the clause within which circumstances happen to bring them. The proviso, therefore, cannot be repugnant to either clause, but only an exception to it.

Such, then, is the necessity of the proviso, and such is the extent of its operation. We are now prepared to consider the third clause in connection with the proviso, and when so considered we shall see, I apprehend, that the construction which would make it applicable only to estates by descent from the father, is an impracticable one.

Suppose it to be so restricted, and then mark the result. In the first place, then, if it be so confined, it excludes estates by purchase entirely from the clause, and in fact all others not passing by descent from the intestate father to such child. If this be true, the mother can take nothing in virtue of the clause, unless it be construed to defeat a proviso which it immediately suggests and seems to require, for it is an estate from the father, and as such, must pass by force of the proviso, on the decease of the child, to the next of kin of the blood of the father. Neither can she take anything in virtue of the second clause, that is as next of kin; for the same reason exists for the operation of the proviso on this clause as on the third. Besides the phraseology of the proviso, such right, title and interest to such real estate recalls the words of

the second clause as if indicative of its intended application. The provision, therefore, defeats the claim of the mother throughout. And as to brothers and sisters, the mother being excluded from the second clause, they are therein provided for as the only next of kin that can inherit. Thus, on this construction, the third clause, by the operation of the proviso on the one hand and of the second clause on the other, is rendered completely nugatory and of no effect. If, however, as has been argued, " every brother and sister" means every brother and sister of the father, the clause has still a meaning. This construction, which vests the estate in uncles and aunts in preference to the deceased child's own brothers and sisters, seems to be a wide departure from the general intent of a statute, the first clause of which carries the estate of a father exclusively to his children. But the words will not bear this construction. Children, mother, brothers and sisters are correlative terms, all suggested by the use of the first, and they must all be construed as having relation to it.

This construction, therefore, in any view, cannot be the true construction. It then will not do to restrict the clause to estates by descent, and if not, then it has no restriction, and therefore includes estates by purchase, and consequently the estate in question. But all estates by purchase fall, as we have seen, exclusively within the control of the clause which embraces them, and beyond that of the proviso. I am, therefore, of opinion, that the estate whereof George C. Mann died seized as aforesaid, descended in equal portions to his brothers and sisters and mother, and that the plaintiffs have judgment in the usual form for the possession of one undivided fifth part of the land described in their declaration.[1]

---

[1] The same question decided in this case, was decided in *Amy Weatherhead* v. *Nathaniel Newell*, at the same term of the court; a short opinion of the court on file, referring to the above case of *Mowry et Ux.*